IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUNE K. BAUGHMAN,**<br>　　　　**Plaintiff**<br><br>　　v.<br><br>**CHEUNG ENTERPRISES, LLC,**<br>**d/b/a MCDONALDS,**<br>　　　　**Defendant** | Civil No. 1:13-CV-1511<br><br><br><br>Judge Sylvia H. Rambo |

## M E M O R A N D U M

In this employment discrimination action, Plaintiff, a former employee of Defendant, alleged that she was discriminated against because of her age and disability when her employment was terminated, which she contends was in violation of both the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act.  Presently before the court are Defendant's motions in limine (Docs. 39, 41, 43), wherein Defendant contends that Plaintiff should be precluded from presenting certain evidence because the evidence is either irrelevant and/or prejudicial (*see* Doc. 44), unable to be presented in an admissible form and/or is unfairly prejudicial (*see* Doc. 42), or was untimely disclosed (*see* Doc. 40).  For the following reasons, Defendant's motions will be denied.

**I.**　　**Background**

Because the court writes primarily for the parties and because the facts of the record have been summarized by this court in a separate memorandum (*see* Doc. 31), the court will only recite the facts essential to this memorandum.

　　**A.**　　**Facts**

In 2005, Plaintiff, June Baughman, who at all times relevant to this litigation was a member of the class of individuals protected against age-based

discrimination in the workplace, was hired as a crew trainer by Defendant, Cheung Enterprises,[1] to work in a McDonald's restaurant located within the Middle District of Pennsylvania. Plaintiff was employed in this capacity until her employment was terminated on April 2, 2012.

Dora Matei ("Matei") became manager of the McDonald's restaurant in October 2011. (Doc. 24, ¶ 25.) Soon after Matei became manager, she met with staff to discuss store needs and employee performance, which included reports that the overnight shift, of which Plaintiff was a part, was not fulfilling its cleaning and restocking duties. (*Id.* at ¶ 26; Doc. 26-3, p. 11 of 40.) Plaintiff, who was one of only a few individuals over the age of forty employed by Defendant, received performance warnings due to her inability to complete certain duties, which prompted Matei to reschedule Plaintiff from the overnight shift to the morning weekend shift. The schedule change failed to correct the problems, and Matei testified that she told Plaintiff that her employment would be terminated if her performance did not improve. Although Plaintiff never received any written warnings for her performance and disputes each issue deemed unsatisfactory on her performance review, she never challenged or expressed any disagreement with her "below standards" ratings.

Relevant to the matter *sub judice*, Plaintiff testified during her deposition that she heard from Ester Bair,[2] a manager at the McDonald's, that there was a "hit list" of five or six of the older employees that Defendant directed Matei to

---

[1] Defendant is a limited liability corporation that operated multiple McDonald's fast-food franchises in the Harrisburg area and was co-owned by Andrew and Dorothy Cheung. (Doc. 24, ¶¶ 1–2.)

[2] The spellings "Bair" and "Beher" have been used by both parties. (*See* Doc. 39-2, p. 2 of 6; Doc. 40, p. 1 of 4; Doc. 41-1, p. 2 of 7.) Because "Bair" has been used most frequently in documents related to the matter at hand, the court will use this spelling.

"get rid of." (Doc. 26-1, p. 55 of 183.) Plaintiff testified that she heard that she was included on this list. (*Id.* at p. 56 of 183.) At the time of Plaintiff's deposition, at least four of those allegedly included on the hit list were no longer employed by Defendant. (*Id.* at p. 56 of 183.)

Plaintiff's unsatisfactory performance was brought up during a meeting with several managers regarding the restaurant's needs for improvement, and several other managers voiced concerns similar to those of Matei. (Doc. 26-3, p. 18 of 40.) Based on Plaintiff's failure to improve, Matei decided that Plaintiff needed to be disciplined in the form of being suspended. (*Id.* at p. 18 of 40.) Matei discussed her plan to suspend Plaintiff with Eric Whatmore ("Whatmore"), the assistant manager at the restaurant, to which he suggested that Matei terminate rather than suspend Plaintiff's employment. (Doc. 26-3, pp. 18–19 of 40; *see also* Doc. 24, ¶ 54.)

Subsequently, Plaintiff met with Matei and Whatmore at approximately 2:00 p.m. on April 2, 2012, at which time Plaintiff was informed that her employment was terminated due, in part, to Plaintiff's inability to multitask. (Doc. 24, ¶ 53; Doc. 26-1, pp. 90–91 of 183.) In her deposition, Plaintiff's recollection of this conversation was less than complete but confirmed that Matei stated her opinion that Plaintiff was not performing her job. (Doc. 26-1, p. 92 of 183.) Although Plaintiff testified that she did not agree with Matei's assessment, she admitted that she did not argue or challenge Matei on this point. (*Id.* at p. 92 of 183.) Plaintiff testified that she could not point to an instance where Matei fabricated an issue regarding Plaintiff's performance. (*Id.* at p. 84 of 183.) Rather, Plaintiff conceded that she was not reaching the performance levels set by Matei. (*Id.* at p. 85 of 183.)

Sometime between April 2, 2012 and April 6, 2012, Matei authored an Employee Action Form that documented the April 2, 2012 meeting. (Doc. 24, ¶ 57.) The Employee Action Form explained that Plaintiff "was terminated . . . do [sic] to

her poor performance . . . [Plaintiff] also knows that because of her age and health essue [sic] she cant [sic] perform [her] job with 100% anymore." (Doc. 26-1, p. 141 of 183 ("Original EAF").) Plaintiff testified that "[her age or health] came up because [Matei] told [her that she] should retire and take it easy like [Matei's] grandmother." (*Id.* at p. 102 of 183.) Although she did not know Plaintiff's exact age (Doc. 26-3, p. 21 of 40), Matei knew that Plaintiff was older than forty and admitted that she recognized that Plaintiff was an older individual during the meeting. (*Id.* at p. 20 of 40.) Matei adamantly denied telling Plaintiff that her employment was terminated due to Plaintiff's age. (*Id.* at p. 24 of 40.)

   At some point, Matei brought the Original EAF to Dorothy Cheung ("Mrs. Cheung") for proofreading. (*See id.* at p. 25 of 40.) After reading the Original EAF, Mrs. Cheung questioned the basis for Matei's inclusion of "age and health" in the explanation. (Doc. 26-4, p. 12 of 36.) After discussing the issue with Matei, Mrs. Cheung determined that Matei "was just thinking of [Plaintiff] as her own grandmother and [thought she] should just be at home . . . [not] work[ing] so hard every day." (*Id.*) During her deposition, Mrs. Cheung admitted that she was concerned of Matei's inclusion of Plaintiff's "health and age issue" in the explanation for termination because "that was not the reason why [Plaintiff] was terminated." (*Id.* at p. 14 of 36.) Mrs. Cheung directed Matei to complete an Employee Action Form that properly reflected the basis for Matei's terminating Plaintiff's employment and to omit the language that raised Mrs. Cheung's concerns. (*Id.* at pp. 14–15 of 36.) A revised Employee Action Form ("Revised EAF") was drafted, indicating that Plaintiff "was terminated for poor performance." (Doc. 26-4, p. 32 of 36.) Plaintiff never received a copy of the Revised EAF. (*Id.* at p. 26 of 40.)

## II. Procedural History

Plaintiff initiated this action on June 6, 2013, by filing a two-count complaint alleging that she was subject to discrimination and disparate treatment on the basis of her age and disability when her employment was terminated on April 2, 2012, which she contends was in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"). (Doc. 1.) The case was placed on a standard case management track, in which the discovery period was to end on February 3, 2014. (Doc. 11.) On July 26, 2013, Plaintiff filed her initial disclosures, disclosing five witnesses that she may use at trial to support her claims. (Doc. 39-1, pp. 1–2 of 5.) On January 20, 2014, Plaintiff filed a motion for enlargement of time for discovery, which was granted, extending the time for discovery until March 3, 2014. (Docs. 18 & 19.) On February 25, 2014, less than a week before the end of discovery, Plaintiff filed supplemental disclosures, adding eight more witnesses[3] that she considered using to support her claims. (Doc. 39-2, pp. 1–3 of 6.)

On September 9, 2014, this court entered judgment in favor of Defendant on Plaintiff's disability discrimination claim. (Docs. 30 & 31.) Therefore, only Plaintiff's age discrimination claim remains. (*See id.*) The trial is currently scheduled for January of 2015. (Doc. 37.)

On November 10, 2014, Defendant filed the instant motions in limine. (Docs. 39, 41, 43.) Defendant filed a brief in support of each motion. (Docs. 40, 42, 44.) Plaintiff filed an opposing brief to each of Defendant's motions on November

---

[3] The eight witnesses disclosed in Plaintiff's supplemental disclosures were: Brady Baughman, Ester Bair, Lorraine York, Debra Hershey, Michelle Waple, Billie Holdren, Donna Adams, and Pamela Wingard. (Doc. 39-2, pp. 1–2 of 6.) Brady Baughman is Plaintiff's husband. (*Id.* at p. 1 of 6.) Ester Bair is a manager employed by Defendant. (Doc. 26-1, p. 55 of 183.) The remaining six witnesses were previously employed by Defendant while over the age of forty. (Doc. 39-2, p. 2 of 6.)

20, 2014. (Docs. 48–50.) The motions have been adequately briefed and are appropriate for consideration.

### III.     Legal Standard

Motions in limine are "designed to narrow the evidentiary issues for trial." *Johnson v. Fed. Exp. Corp.*, No. 1:12-CV-444, 2014 WL 1653087, at *1 (M.D. Pa. 2014). Additionally, motions in limine "eliminate unnecessary trial interruptions." *Id.* If the "context of [a] trial would provide further clarity," a court may defer ruling on a motion in limine. *Id.*

### IV.     Discussion

Defendant argues that the following should be precluded from trial: (1) testimony from witnesses "not timely disclosed[;]" (2) evidence of a "hit list[;]" and (3) evidence related to the employment of foreign workers and other related matters. The court will address each argument in turn.

#### A.     Testimony from Witnesses not Timely Disclosed

Defendant seeks to exclude from trial testimony from the following witnesses who it contends were "not timely disclosed[:]" Brady Baugman, Ester Bair, Lorraine York, Debra Hershey, Michelle Waple, Billie Holdren, Donna Adams, and Pamela Wingard. (*See* Doc. 39, p. 1 of 2; Doc. 40, p. 1 of 4.) Defendant reasons that Plaintiff knew of the witnesses "at the time of her initial disclosures," yet did not identify them as potential witnesses until filing her supplemental disclosures, "a week before the close of discovery." (*See id.* at 3 of 4.) Finally, Defendant contends that Plaintiff had no reason to wait to identify the witnesses and that, with only a week of discovery remaining, it was "unable to conduct depositions or any meaningful discovery regarding these eight . . . witnesses." (*Id.* at p. 1 of 4.)

Under Federal Rule of Civil Procedure 26(a), "a party must, without awaiting a discovery request, provide [initial disclosures] to the other parties[,] . . . [including] the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." A party must only disclose witnesses that it intends to use at trial. Fed. R. Civ. P. 26 advisory committee's note (stating that "[a] party is no longer obligated to disclose witnesses[,] . . . whether favorable or unfavorable, that it does not intend to use [at trial]"). Once a party makes such a disclosure, that party is under a duty to supplement the disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1). Supplementations "need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26 advisory committee's note.

If a party violates a discovery rule, sanctions may be imposed upon the party. *See Tolerico v. Home Depot*, 205 F.R.D. 169, 176 (M.D. Pa. 2001) (stating that whether sanctions are imposed is a matter within the discretion of the trial court). Sanctions are not warranted for errors that are harmless in nature. *See* Fed. R. Civ. P. 37(c) (stating that a party who failed to identify a witness to the opposing party may still use that witness at trial if the failure is substantially justified or harmless in nature). The Third Circuit has cautioned that excluding evidence is an "extreme sanction" for a discovery-related violation. *See In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999).

In the instant case, no evidence exists that Plaintiff did not properly follow the Federal Rules of Civil Procedure. Plaintiff filed her initial disclosures,

7

putting Defendant on notice of the witnesses that she intended to use to support her claims. Even if Plaintiff knew the identities of the eight disputed witnesses at the time of her initial disclosures, she was under no obligation to inform Defendant of their identities if she did not intend to use them to support her claims. Defendant does not allege that Plaintiff, at the time of her initial disclosures, knew that she would use the disputed witnesses and acted willfully or in bad faith by withholding their identities until the week before discovery ended. Plaintiff also supplemented her initial disclosures within the discovery period. Perhaps Plaintiff could have informed Defendant of some of the witnesses' identities at an earlier time, but supplementations need not be made as each new item of information is learned.

Furthermore, any prejudice that Defendant suffered is minimal. Defendant was notified of the witnesses' identities on February 25, 2014, long before the January 2015 trial date and before the close of fact discovery.[4] Additionally, Defendant was made aware of the identities of the eight witnesses during the discovery process. Lorraine York, Debra Hershey, Michelle Waple, Billie Holdren, Donna Adams, and Pamela Wingard are all former employees of Defendants. In fact, Plaintiff learned the identities of these six witnesses from Defendant.[5] From Plaintiff's deposition testimony, Defendant learned the identities of Brady

---

[4] Defendant highlights that the court included in a previous order granting a motion for extension of time that "no further extensions of time will be granted absent extraordinary circumstances" and, therefore, argues that a request to extend discovery to permit depositions of the supplementary disclosed witnesses would have been futile. (Doc. 51, p. 5 of 6 (citing Doc. 19).) Defendant's assumption in this regard is not convincing. The court was never faced with having to decide whether the timing of the disclosures presented extraordinary circumstances that would warrant a further extension of discovery. Defendant had the opportunity to seek depositions of the witnesses between the time they were disclosed and the date discovery closed or seek an extension if a short-noticed deposition was impossible. Instead, Defendant chose to forgo those options presumably with the intent of seeking exclusion of the witnesses through motions in limine. The court will not exclude the witnesses when Defendant chose not to cure any prejudice when it was feasible for it to do so.

[5] In her supplemental disclosures, Plaintiff identified these six witnesses as "various past employees of Defendant over the age of forty (40) as identified by Defendant." (Doc. 39-2, p. 2 of 6.)

Baughman, Plaintiff's husband, and Ester Bair, an employee of Defendant's who worked as a manager at the McDonald's where Plaintiff was employed. (*See* Doc. 50-1, pp. 2, 6 of 15.) Therefore, because Defendant knew the identities of these witnesses during discovery, and at the very least should have known of their potential relevance to the instant case, any error on Plaintiff's part was harmless. Excluding these eight witnesses' testimony from trial is certainly not warranted. Consequently, Defendant's motion in limine to exclude testimony from the eight witnesses it deemed not timely disclosed will be denied.

### B. Evidence of a Hit List

Defendant seeks to exclude from trial evidence of a "hit list" that Plaintiff alleges contained the names of older employees that Defendant was to terminate. (Doc. 42, p. 1 of 4.) Defendant contends that no evidence of such a list exists except for hearsay evidence. (*Id.*) Defendant further contends that if the jury is allowed to hear evidence of this alleged hit list, Defendant would be unfairly prejudiced "as [Defendant] cannot prove the non-existence of the document." (*Id.* at p. 2 of 4 (emphasis removed).)

Under Federal Rule of Evidence 801, "hearsay" is defined as an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A statement that is categorized as hearsay is inadmissible at trial. Fed. R. Evid. 802. A statement will always be deemed nonhearsay, however, if it is a "party admission." *See* Fed. R. Evid. 801(d)(2). A statement is a party admission when it "is offered against [the] opposing party and . . . was made by the party's . . . employee on a matter within the scope of [his or her employment] . . . while it lasted." Fed. R. Evid. 801(d)(2).

In this case, Plaintiff agrees that "[Plaintiff's] testimony about the existence of the [hit list], standing alone, [is] likely not . . . admissible [as hearsay

evidence]." (Doc. 49, p. 3 of 6.) However, Plaintiff asserts that "[Ester] Bair is [the] relevant witness who possesses information related to evidence of the [hit list]." (*Id.*) Plaintiffs further asserts that Ester Bair will testify at trial that Richard Johnson, Defendant's Operations Manager, provided multiple managers employed by Defendant with the hit list, in which Plaintiff's name was included. (*See id.*) Because Ester Bair's testimony will not be excluded from trial, *see supra* Part IV.B, her statements will not be out-of-court. Furthermore, her statements will be offered against Defendant, the opposing party because Richard Johnson is Defendant's Operations Manager. Finally, the subject matter of the statements, which deals with the termination of employees, is well within the scope of Richard Johnson's employment, and the statements were made while Richard Johnson was employed by Defendant. Accordingly, these statements are nonhearsay party admissions under Federal Rules of Evidence 801 and will be admissible at trial.

Under Federal Rule of Evidence 403, evidence may be excluded from trial if its probative value is *substantially outweighed* by the danger of unfair prejudice. Fed. R. Evid. 403. "Unfair prejudice" is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* advisory committee's note. To determine if evidence is unfairly prejudicial, a court must "balanc[e] the probative value of and need for the evidence against the harm likely to result from its admission. *Id.* The Third Circuit has cautioned trial courts from granting motions in limine based solely on the grounds of unfair prejudice, stating that Federal Rule of Evidence 403 is a "trial-oriented rule." *See Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997) (declaring that "[w]e have . . . made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*").

The court recognizes that evidence of a hit list will likely be prejudicial to Defendant. Whether this risk of prejudice is unfair, however, has not been proven. Provided it is introduced through an admissible form, the court finds no justification for excluding evidence of the "hit list" at this time. Accordingly, the court will deny the motion in limine seeking to exclude evidence of a hit list.

### C. Evidence Related to the Employment of Foreign Workers and Other Related Matters

Defendant seeks to exclude from trial evidence that Defendant employed foreign workers and other related matters, including that Defendant did not properly pay these workers overtime pay and that, because of the controversy surrounding Defendant's treatment of its foreign workers, Defendant was forced to "divest[] itself of its McDonald's franchise." (Doc. 44, pp. 1–2 of 6.) Defendant contends that these matters are merely "side issues" and are, therefore, irrelevant. (*See id.* at pp. 1–2, 4 of 6.) Defendant further contends that evidence related to these matters is unfairly prejudicial. (*Id.* at pp. 1–2 of 6.) Plaintiff responds by arguing that the foreign workers were each younger than forty and were favored by Defendant because Defendant did not pay the foreign workers overtime.

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[] and [if] . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. If evidence is irrelevant, it is inadmissible, but if evidence is relevant, it is admissible unless the U.S. Constitution, a federal statute, another Federal Rule of Evidence, or a rule prescribed by the U.S. Supreme Court declares otherwise. Fed. R. Evid. 402. One way that relevant evidence may be deemed inadmissible is if the probative value of the evidence is "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

When evidence is challenged as irrelevant and/or prejudicial, a trial court should reserve promulgating a final decision on the matter until trial. *See Univac Dental Co. v. Dentsply Int'l, Inc.*, 268 F.R.D. 190, 198 (M.D. Pa. 2010) (stating that motions in limine "often present issues for which final decision is best reserved for a specific trial situation[,] . . . particularly . . . when the evidence is challenged as irrelevant or prejudicial"). As stated in Part IV.B., Rule 403 is "trial oriented," *Walden*, 126 F.3d at 518 n.10, and the court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. . . . Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

The court will not rule that evidence of Defendant's employment of foreign workers and other related matters should be excluded from trial at this time. Plaintiff has not yet had the opportunity to develop the record,[6] and therefore, the relevance of the evidence cannot be appropriately assessed. Thus, Defendant has not demonstrated that the evidence is either irrelevant or unfairly prejudicial and, therefore, has failed to sustain its burden. However, Defendant may make an

---

[6] Plaintiff contends that evidence of Defendant's employment of foreign workers and other related matters is relevant because the foreign workers were all under the age of forty and, because of their age, were "favored" by Defendant. (Doc. 48, p. 4 of 7.) As an example, Plaintiff contends that "when the [foreign workers] would work additional shifts over forty (40) hours a week, Defendant did not pay them overtime like they were required to for older employees such as [Plaintiff]." (*Id*.) Plaintiff further contends that because Defendant did not pay the foreign workers overtime, the foreign workers were given preferential treatment in all scheduling decisions. (*See id.*) Finally, Plaintiff contends that "[this] evidence is . . . relevant to show that Defendant considered the age of employees when making employment decisions[,] . . . which makes it more probable that Defendant terminated [Plaintiff's] employment because of her age." (*Id.*) Although the court will reserve ruling until a more appropriate time, it does express skepticism as to Plaintiff's proffered justification for the evidence and is concerned that such evidence may have the potential to confuse the jury or otherwise unfairly prejudice Defendant.

appropriate objection at trial so the evidence can be assessed in the context of the record established.  Consequently, Defendant's motion to exclude from trial evidence of Defendant's employment of foreign workers and other related matters will be denied without prejudice as premature.

## V.         Conclusion

For the foregoing reasons, Defendant's motion in limine to exclude testimony from witnesses not timely disclosed will be denied.  Defendant's motion in limine to exclude evidence of a hit list will be denied, provided that the evidence is entered in an appropriate method.  Defendant's motion in limine to exclude evidence related to the employment of foreign workers and other related matters will be denied without prejudice as premature.  Defendant may raise the argument contained therein at an appropriate time during trial.

An appropriate order will be issued.

             s/Sylvia H. Rambo
             Wpkgf "Ucygu'F kutlev'Lwf i g

Dated:  December 2, 2014.