IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUNE K. BAUGHMAN,** | : |
| **Plaintiff** | : Civil No. 1:13-CV-1511 |
| | : |
| v. | : |
| | : |
| **CHEUNG ENTERPRISES, LLC,** | : |
| **d/b/a MCDONALDS,** | : |
| | : Judge Sylvia H. Rambo |
| **Defendant** | : |

## **M E M O R A N D U M**

In this employment discrimination action, Plaintiff sued her former employer based on her allegations that she was discriminated against because of her age when her employment was terminated. Following a trial on Plaintiff's claims of discrimination in violation of both the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act, the jury returned a verdict in Defendant's favor. Presently before the court is Plaintiff's motion for a new trial, wherein Plaintiff contends that the court should grant a new trial because the jury's verdict was against the weight of the evidence. (Doc. 84.) For the following reasons, Plaintiff's motion will be denied.

## **I.      Background**

As the parties have already been through a trial on this matter, and the evidence presented at trial was largely consistent with the evidentiary record for purposes of summary judgment and was set forth at length in the court's previous memorandum, *see Baughman v. Cheung Enters.*, 124 Fair Empl. Prac. Cas. 567, 2014 WL 4437545 (M.D. Pa. Sept. 9, 2014), it is unnecessary to recount a lengthy factual and procedural history herein, although the court has thoroughly reviewed the trial record. The essence of Plaintiff's motion challenges the jury's crediting Defendant's explanation for terminating Plaintiff's employment rather than Plaintiff's allegations of discrimination. In addition to her own testimony, Plaintiff

presented at trial the testimony of Esther Bair, a former co-worker at Defendant's restaurant, Brady Baughman, her husband, Dora Matei, the former manager at Defendant's restaurant, Eric Whatmore, the former first assistant manager at Defendant's restaurant, Dorothy and Andrew Cheung, the owners of the Defendant company, and Jonathan Cramer, a consulting actuary. Defendant presented the testimony of Richard Johnson, Defendant's former Operations Manager. While a review of every piece of testimony is unnecessary, the court believes the following evidence places the matter into proper context.

      Plaintiff, who at all times relevant to this litigation was a member of the class of individuals protected against age-based discrimination in the workplace, testified that she was hired by Defendant in 2005 to work as a crew member in a McDonald's restaurant located within the Middle District of Pennsylvania. Plaintiff testified that her duties varied, but, as relevant to her claims, she was responsible for preparing salads, parfaits, and other fast food items. Plaintiff testified that, over the course of her employment, she worked both the day shift, which spanned from 5:00 a.m. until 1:00 p.m., and the night shift, which spanned from 11:00 p.m. until 7:00 a.m., and explained that the night shift had far fewer staff. Plaintiff testified that, over the course of her employment with Defendant, she received several positive performance reviews, never received a warning that she was at risk of termination, and was never suspended. Plaintiff admitted, however, that she did receive written warnings for smoking in unauthorized places in and around the restaurant. Plaintiff was employed in this capacity until her employment was terminated on April 2, 2012.

      Dora Matei, who Richard Johnson described as someone who runs a "tight ship," became manager of the McDonald's restaurant in October 2011. Soon after Matei became manager, she met with staff to discuss store needs and employee

performance, which included reports that the overnight shift, of which Plaintiff was a part at the time Matei became manager, was not fulfilling its cleaning and restocking duties.  Approximately one month after Matei became manager, she rescheduled Plaintiff from the overnight shift to the day shift, a change that Matei testified was intended to assist Plaintiff due to the increased number of co-workers during normal business hours.  The schedule change failed to correct the reported problems, and Matei testified that she verbally warned Plaintiff that her performance needed to improve.  As the performance issues continued, Matei believed it proper to suspend Plaintiff and drafted an employee action form that reflected the disciplinary action and provided as follows:

> June is been suspended for not finishing her job[.] [T]his is not the first time that this happen [sic] and I already when [sic] over her responsabilitys [sic] and she is still doesn['] t get it[.]  She doesn['] t follow persedures [sic] and not following direccion [sic] and we not going to keep taking that from her anymore.

(Pl. Ex. 10, *admitted at* Trial, Jan. 12, 2015.)  Matei discussed her intended performance-based disciplinary action with Eric Whatmore.  During that conversation, Matei decided to terminate rather than suspend Plaintiff due to the consistency of Plaintiff's sub-par performance.

The essence of Plaintiff's claim arises from a meeting during which Matei terminated Plaintiff's employment and an employee action form that was drafted shortly thereafter.  Matei met with Plaintiff on April 2, 2012, and explained that Plaintiff's employment was terminated due to her poor performance.  Matei testified that Plaintiff understood what she was being told and did not contest Matei's decision.  Plaintiff testified that during this termination meeting, Matei, who testified that she did not know Plaintiff's exact age but knew that she was "older," compared

Plaintiff to Matei's grandmother. Matei explained that part of the conversation as follows:

> After we talk and I fired he r, and she started talking about her problems, she told me about her husband that was younger than her and sits at home, and she has all this issues and health problem s, and, you know, she have to work because she still have to collect a little bit of social security, I guess.
>
> So I was just trying to sym pathize with her an d feel sorry and bad for her that she have to do all that. I said, you know what, you should stay home, he should work, but as a joke, like laughing. You shou ld stay home and he should work, he's younger than you. With a ll these problems that you have, you should stay home. But not like, you need to go home and stay there, I never said it like that.
>
>         \*   \*   \*
>
> I said to her, well, my grandmother, she's 90 years old, or 89 about that time. . . . I told her that . . . my grandmother used to stay home because she had 14 kids, and they all help her out and work with her.
>
>         \*   \*   \*
>
> I told her, because my grandmother never had to work. She had 14 kids. And they all help her out. She never had to do anything her life, you know.  My uncles and m y mom, they took care of her. . . . So I just was trying to be nice and talk to her.

(Doc. 82, p. 44-45 of 210.) Matei's version of the meeting in this regard was consistent with Whatmore's testimony.

Following the meeting Matei created an employee action form that documented Plaintiff's termination. The explanation section of the form provided as follows:

> On April 2, 20012 [sic]  Ms[.] June K[.] Baughman was terminated by the store m anager do [sic]  to her poor performance. She spoke with her and splained [sic] to her the

> reason why she was been let go[.] Ms. June understood and agree with what she was telling her and also knows that because of her age and health essue [sic] she can[']t perform that job with 100% anymore[.] Ms. June is a wonderfull [sic] employee and I was very glad working with her but she can[']t keep up anymore and she also agree with it and that it was time for her to go.. [sic]

(Pl. Ex. 11, *admitted at* Trial, Jan. 12, 2015.) Matei brought the form to Dorothy Cheung ("Mrs. Cheung") for proofreading. Upon reading the form, Mrs. Cheung questioned the basis for Matei's inclusion of "age and health" in the explanation. Mrs. Cheung admitted that she was concerned about Matei's including age in the explanation, but testified that, after speaking with Matei, she believed that Plaintiff was fired for her poor performance and not her age. Accordingly, Mrs. Cheung directed Matei to compose a new form that accurately represented the reason for Plaintiff's termination and to get rid of the original form due to its being irrelevant, unclear, and unprofessional. Matei complied with Mrs. Cheung's direction and, with the help of another employee, created a revised form that only reflected, what Matei testified was, the actual reason Plaintiff was terminated. The revised form provided as follows:

> June K. Baughman was terminated for poor performance. She has been counseled on her duties and the timely manner in which they must be accomplished. June was not able to complete the tasks correctly, efficiently nor in the allotted time allowed to complete the tasks. Tasks were not completed by the end of the shift and June went home anyway. This is not acceptable tasks must be done before the end of the shift. Employment is terminated.

(Pl. Ex. 12, *admitted at* Trial, Jan. 13, 2015.)

During trial and in her post-trial briefing, Plaintiff highlighted Defendant's failure to comply with a progressive discipline policy. The court found credible Andrew Cheung (Mr. Cheung)'s and Mrs. Cheung's testimony, which was

consistent with that of Matei, that Defendant did not have a progressive discipline policy pertaining to poor performance. (*See* Doc. 82, p. 172 of 210 ("[T]he only policy for the progressive [discipline] is applying to cash.").) Furthermore, the court found significant Plaintiff's performance as documented in several performance reviews. Plaintiff's performance review created in September 2005 reflected an "outstanding" overall performance and provided as follows:

| **Performance Behavior** | Exceeds standards | Meets standards | Below Standards |
|---|---|---|---|
| **TOTAL CUSTOMER SATISFACTION** *anticipating customer needs; demonstrating sensitivity to the customer perspective; giving high priority to customer satisfaction.* | | | |
| Delivers hot, fresh product. | | X | |
| Achieves 100% accuracy in customer orders. | | X | |
| Handles complaints quickly and effectively. | | X | |
| Personal interaction–treats each customer like a valued guest. | X | | |
| Delivers quick service. | X | | |
| Delivers impressive service. | X | | |
| **TEAMWORK–** *actively working with others to achieve goals; taking actions that demonstrate consideration for the feelings and needs of others; being aware of the effect of one's behavior on others.* | | | |
| Makes contributions and participates as a team member of the team. | X | | |
| Supports co-workers in responding to and meeting customer needs. | X | | |
| Helps other team members with tasks as needed. | X | | |
| **WORK STANDARDS** *setting high goals or standards of performance for self and others; accomplishing tasks through concern for all areas of the job; being dissatisfied with average performance.* | | | |
| Follows all restaurant procedures carefully and correctly. (i.e. cash, grill, food safety/sanitation procedures). | | X | |
| Strives for continuous improvement on every station worked. | | X | |
| Consistently shows up on time. | X | | |
| **JOB FIT -** *the extent to which the individual can adapt to the job's activities, hours and responsibilities.* | | | |
| Works well in a fast-paced environment. | X | | |
| Takes pride in accomplishing tasks under time pressure. | X | | |
| Willing to offer assistance to customers without being asked. | | X | |

| OVERALL PERFORMANCE | X OUTSTANDING | EXCELLENT | GOOD | NEEDS IMPROVEMENT |

(Pl. Ex. 1, *admitted at* Trial, Jan. 12, 2015.) Plaintiff's performance review dated September 2006 reflected a "good" overall performance and provided as follows:

| **Performance Behavior** | Exceeds standards | Meets standards | Below Standards |
|---|---|---|---|
| **TOTAL CUSTOMER SATISFACTION** *anticipating customer needs; demonstrating sensitivity to the customer perspective; giving high priority to customer satisfaction.* | | | |
| Delivers hot, fresh product. | | X | |
| Achieves 100% accuracy in customer orders. | | X | |
| Handles complaints quickly and effectively. | | X | |
| Personal interaction–treats each customer like a valued guest. | | X | |
| Delivers quick service. | | X | |
| Delivers impressive service. | | X | |
| **TEAMWORK**– *actively working with others to achieve goals; taking actions that demonstrate consideration for the feelings and needs of others; being aware of the effect of one's behavior on others.* | | | |
| Makes contributions and participates as a member of the team. | X | | |
| Supports co-workers in responding to and meeting customer needs. | | X | |
| Helps other team members with tasks as needed. | X | | |
| **WORK STANDARDS** *setting high goals or standards of performance for self and others; accomplishing tasks through concern for all areas of the job; being dissatisfied with average performance.* | | | |
| Follows all restaurant procedures carefully and correctly. (i.e. cash, grill, food safety/sanitation procedures). | | X | |
| Strives for continuous improvement on every station worked. | | X | |
| Consistently shows up on time. | | X | |
| **JOB FIT -** *the extent to which the individual can adapt to the job's activities, hours and responsibilities.* | | | |
| Works well in a fast-paced environment. | | X | |
| Takes pride in accomplishing tasks under time pressure. | | X | |
| Willing to offer assistance to customers without being asked. | | X | |
| **OVERALL PERFORMANCE**      OUTSTANDING      EXCELLENT    X GOOD      NEEDS IMPROVEMENT | | | |

(Pl. Ex. 2, *admitted at* Trial, Jan. 12, 2015.)  Plaintiff's performance review dated March 2008 again reflected a "good" overall performance and provided as follows:

| **Performance Behavior** | Exceeds standards | Meets standards | Below Standards |
|---|---|---|---|
| **TOTAL CUSTOMER SATISFACTION** *anticipating customer needs; demonstrating sensitivity to the customer perspective; giving high priority to customer satisfaction.* | | | |
| Delivers hot, fresh product. | | X | |
| Achieves 100% accuracy in customer orders. | | X | |
| Handles complaints quickly and effectively. | | X | |
| Personal interaction–treats each customer like a valued guest. | | X | |
| Delivers quick service. | | X | |
| Delivers impressive service. | | X | |
| **TEAMWORK**– *actively working with others to achieve goals; taking actions that demonstrate consideration for the feelings and needs of others; being aware of the effect of one's behavior on others.* | | | |
| Makes contributions and participates as a member of the team. | X | | |
| Supports co-workers in responding to and meeting customer needs. | X | | |
| Helps other team members with tasks as needed. | X | | |
| **WORK STANDARDS** *setting high goals or standards of performance for self and others; accomplishing tasks through concern for all areas of the job; being dissatisfied with average performance.* | | | |
| Follows all restaurant procedures carefully and correctly. (i.e. cash, grill, food safety/sanitation procedures). | | X | |
| Strives for continuous improvement on every station worked. | | X | |
| Consistently shows up on time. | X | | |
| **JOB FIT** - *the extent to which the individual can adapt to the job's activities, hours and responsibilities.* | | | |
| Works well in a fast-paced environment. | | X | |
| Takes pride in accomplishing tasks under time pressure. | | X | |
| Willing to offer assistance to customers without being asked. | | X | |
| **OVERALL PERFORMANCE**          OUTSTANDING          EXCELLENT       X  GOOD          NEEDS IMPROVEMENT | | | |

(Pl. Ex. 3, *admitted at* Trial, Jan. 12, 2015.)  The first performance review issued after Matei became manager was dated October 2011, and again reflected a "good" overall performance and provided as follows:

| **Performance Behavior** | Exceeds standards | Meets standards | Below Standards |
|---|---|---|---|
| **TOTAL CUSTOMER SATISFACTION** *anticipating customer needs; demonstrating sensitivity to the customer perspective; giving high priority to customer satisfaction.* | | | |
| Delivers hot, fresh product. | | X | |
| Achieves 100% accuracy in customer orders. | | | X |
| Handles complaints quickly and effectively. | | X | |
| Personal interaction–treats each customer like a valued guest. | | X | |
| Delivers quick service. | | | X |
| Delivers impressive service. | | X | |
| **TEAMWORK–** *actively working with others to achieve goals; taking actions that demonstrate consideration for the feelings and needs of others; being aware of the effect of one's behavior on others.* | | | |
| Makes contributions and participates as a member of the team. | X | | |
| Supports co-workers in responding to and meeting customer needs. | | X | |
| Helps other team members with tasks as needed. | X | | |
| **WORK STANDARDS** *setting high goals or standards of performance for self and others; accomplishing tasks through concern for all areas of the job; being dissatisfied with average performance.* | | | |
| Follows all restaurant procedures carefully and correctly. (i.e. cash, grill, food safety/sanitation procedures). | | | X |
| Strives for continuous improvement on every station worked. | | X | |
| Consistently shows up on time. | X | | |
| **JOB FIT -** *the extent to which the individual can adapt to the job's activities, hours and responsibilities.* | | | |
| Works well in a fast-paced environment. | | X | |
| Takes pride in accomplishing tasks under time pressure. | X | | |
| Willing to offer assistance to customers without being asked. | X | | |
| **OVERALL PERFORMANCE**         OUTSTANDING         EXCELLENT       X  GOOD        NEEDS IMPROVEMENT | | | |

(Pl. Ex. 4, *admitted at* Trial, Jan. 12, 2015.)  Lastly, the court notes that Mr. Cheung is more than forty years old, and that Defendant continued to employ multiple individuals over the age of forty at the time Defendant sold the restaurant.  (*See* Doc. 82, pp. 79,182, 189 of 210.)

## II. **Procedural History**

Plaintiff initiated this action on June 6, 2013, by filing a two-count complaint alleging that she was subject to discrimination and disparate treatment on the basis of her age and disability when her employment was terminated on April 2, 2012, which she contends was in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA").  (Doc. 1.)  Following a period for discovery, this court entered summary judgment in favor of Defendant on Plaintiff's disability discrimination claim on September 9, 2014.  (Docs. 30 & 31.)  Thus, the only claims submitted for the jury's consideration at trial were those alleging age discrimination.

Following a three day trial, the jury returned a verdict in Defendant's favor after finding that Plaintiff failed to prove by a preponderance of the evidence that her age was a determinative factor in Defendant's decision to terminate her employment. (Doc. 77.)  Judgment was entered by the Clerk of Court on February 4, 2015, and Plaintiff filed the instant motion for a new trial (Doc. 84) and brief in support (Doc. 85) on February 11, 2015 .

## III. **Legal Standard**

Under Federal Rule of Civil Procedure 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  The decision whether to grant a new trial following a jury verdict is within the sound discretion of the trial judge.  *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992).  Courts have granted motions for a new trial where: "(1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the

evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury." *Todd v. Luzerne Cnty. Children & Youth Servs.*, No. 04-2637, 2011 WL 841429, *2 (M.D. Pa. Mar. 8, 2011) (citing *Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992)). Where the evidence is in conflict or subject to two or more interpretations, the trial judge should be reluctant to grant a new trial. *See Klein v. Hollings*, 992 F. 2d 1285, 1295 (3d Cir. 1993).

The Third Circuit has repeatedly stated that motions for a new trial arguing that the verdict is against the weight of the evidence are proper only "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Whelan v. Teledyne Metalworking Prods.*, 226 F. App'x 141, 145 (3d Cir. 2007) (quoting *Grazier v. City of Phila.*, 328 F.3d 120, 128 (3d Cir. 2003)). This "stringent standard" is established "to ensure that a district court does not substitute its judgment on the facts and the credibility of the witnesses for that of the jury." *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996).

**IV.**     **Discussion**

The essence of Plaintiff's motion is that the jury erroneously believed the testimony presented by Defendant establishing that Plaintiff's employment was terminated because of her poor performance. The court has not the slightest hesitation in agreeing with the jury's conclusion.

In support of her position, Plaintiff points to several pieces of evidence that she argues tends to establish that Defendant's proffered explanation for her termination was pretext. Plaintiff highlights that, over the course of her employment with Defendant, she continually received evaluations that assessed her overall performance as "good." (*See* Doc. 85, p. 4 of 11.) While such a statement is technically accurate, it fails to competently capture the entire climate of Plaintiff's

11

performance. The performance update forms upon which Plaintiff relies only provide four options for rating overall performance: outstanding, excellent, good, and needs improvement. (*See* Pl. Exs. 1-4, *admitted at* Trial, Jan. 12, 2015.) Indeed, a "good" performance update rates the employee's performance as second to the lowest possible rating. Thus, a "good" performance rating has far less import than Plaintiff urges.

Moreover, even a cursory review of the four performance updates presented at trial demonstrate that Plaintiff's performance was on a downward trend. (*Compare* Pl. Ex. 1, *admitted at* Trial, Jan. 12, 2015, *with* Pl. Ex. 4, *admitted at* Trial, Jan. 12, 2015.) For example, in 2005, Plaintiff received nine ratings of "exceeds standards," six ratings of "meets standards," and zero "below standards" ratings, causing her reviewer to rate her overall performance as outstanding. (Pl. Ex. 1, *admitted at* Trial, Jan. 12, 2015.) Plaintiff's next two performance updates were comparatively mediocre, containing a combined six ratings of "exceeds standards," 24 ratings of "meets standards," and zero "below standards" ratings. (*See* Pl. Exs. 2 & 3, *admitted at* Trial, Jan. 12, 2015.) Plaintiff's final performance update contained three ratings of "below standards." (Pl. Ex. 4, *admitted at* Trial, Jan. 12, 2015.) Indeed, notwithstanding the assessment of her overall performance as "good," Plaintiff's final performance update contained three ratings of "below standards," each of which pertained to performance areas corresponding to Matei's explanation for terminating Plaintiff's employment set forth in both the employee action forms, (*see* Pl. Ex. 10, *admitted at* Trial, Jan. 12, 2015; Pl. Ex. 12, *admitted at* Trial, Jan. 13, 2015; *see also* Pl. Ex. 11, *admitted at* Trial, Jan. 12, 2015), and to which Matei testified at trial, (*see* Doc. 82, pp. 28-32 of 210).

Additionally, the jury was certainly justified in finding credible Matei's explanation of the basis for her moving Plaintiff to the daytime shift when Plaintiff's

12

performance on the night shift was inadequate. The undisputed evidence established that the daytime shift had far more employee support than the overnight shift. That Plaintiff was occasionally and sporadically placed on the schedule for the overnight shift neither discredits Matei's explanation that she believed providing Plaintiff with additional assistance would aide her in meeting Defendant's performance expectations nor establishes that Plaintiff was, in fact, able to consistently perform the duties of the overnight shift. Plaintiff also cites the testimony of Whatmore to establish that Plaintiff was capable of working the overnight shift. (*See* Doc. 85, p. 5 of 11.) Characterizing Plaintiff's testimony in such a manner is misleading. At trial, Whatmore qualified his belief that Plaintiff was *capable* of handling the night shift by testifying that her performance "just didn't meet our standards that we needed." (Doc. 82, p. 112 of 210.) The court concludes that the credible evidence established that Plaintiff could not adequately perform the duties required of someone on the night shift.

        Plaintiff also emphasizes that Defendant's failure to follow a progressive discipline policy shows that Plaintiff's "alleged poor performance was not the real reason for her termination." (Doc. 85, p. 7 of 11.) The court disagrees. Weighing the evidence presented at trial, the court finds that Defendant did not have a performance-related progressive discipline policy. Indeed, the three uppermost level employees, Mr. Cheung, Mrs. Cheung, and Matei, each testified that the progressive discipline policy pertained to some, but not all, bases for discipline. Significantly, each of the foregoing witnesses testified that there was no progressive discipline policy mandated in relation to poor performance. Moreover, the fact that a defendant may not have followed its progressive discipline policy in dealing with a plaintiff's performance issues does not compel a finding of pretext. *See Equal Emp't Opportunity Comm'n v. Rite Aid Corp.*, Civ. No. 03-cv-0777, 2005 WL 3434779, *5

(citing *Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 113 (3d Cir. 2003). Accordingly, Plaintiff's argument in this regard is not persuasive.

The factual inconsistencies highlighted by Plaintiff in her post-trial brief does not establish that the jury improperly credited the testimony presented by Defendant's former employees.  For example, Plaintiff highlights that Whatmore and Matei presented somewhat contradictory testimony related to the decision to terminate Plaintiff's employment.  Matei testified that, prior to meeting with Whatmore, she had planned to only suspend Plaintiff due to her poor performance and that the decision to terminate Plaintiff's performance was a result of her discussion with Whatmore.  While Whatmore could not recall who suggested that Plaintiff's employment be terminated, he unequivocally testified that he "never disagreed with the situation."  (Doc. 82, p. 118 of 210.)  Further, Matei's testimony was corroborated by her drafting an employment action form, created prior to her meeting with Whatmore, that suspended Plaintiff due to her poor performance.  (*See* Pl. Ex. 10, *admitted at* Trial, Jan. 12, 2015.) To the extent Matei's testimony in this regard was inconsistent with that of Whatmore, or to the extent Whatmore's trial testimony was inconsistent with that given during his deposition, such inconsistencies were relatively minor and not directly relevant to whether Plaintiff's age was a determinative factor in Defendant's decision to terminate her employment, and the jury was justified in accepting Matei's testimony as credible.

The jury was also justified in accepting Matei's explanation of her referencing her grandmother during the April 2, 2012 meeting with Plaintiff.  While Plaintiff urged the jury to find that this supported an inference of age discrimination, Matei's testimony, which the jury was free to believe, established that such comment was made to lessen the blow of Plaintiff's losing her job.  Indeed, the court found credible Matei's explanation that the reference to her grandmother was more

anecdotal than demonstrative of age discrimination. Similarly, the jury was certainly justified in rejecting Plaintiff's position that the original employment action form was a smoking gun that "adds great weight to the evidence" that Plaintiff's age was a determinative factor. (Doc. 85, p. 9 of 11.) In this regard, the court examines the plain language of the explanation, which provides that "[Plaintiff] was terminated by the store manager *do [sic] to her poor performance*." (Pl. Ex. 11.) Moreover, the court finds that the jury was justified in accepting Matei's proffered explanation for the inclusion of "age" in the form. Matei, whose ability to communicate in English is, admittedly, less than stellar, testified that she included this language because it reflected what Plaintiff told her during the meeting, *i.e.*, Plaintiff's own justification regarding her performance deficiencies. (Doc. 82, p. 51 of 210 ("[T]hat's what she [is] telling me, not me telling her.").) The court rejects Plaintiff's argument that "the comments from Matei both during the termination meeting and within [the original employment action form] show in no uncertain terms that [Plaintiff]'s age was a determinative factor in Matei's decision to terminate [Plaintiff]." (Doc. 85, p. 10 of 11.)

Similarly, the jury was justified in crediting Mrs. Cheung's testimony regarding her direction to Matei to re-write the employee action form to accurately reflect the reason for Plaintiff's termination. Although Mrs. Cheung admitted she was concerned about the contents of the original form, she testified that she directed Matei to rewrite the form because it contained inaccurate information, was poorly written, and was unprofessional. Regardless of Mrs. Cheung's intent in directing Matei to rewrite the form, the jury was certainly justified in concluding that Plaintiff's age was not a determinative factor in Defendant's decision to terminate Plaintiff's employment.

Quite simply, based on all of the evidence presented at trial, some, but not all, of which is discussed herein, the court itself was of the opinion that Plaintiff was terminated for her poor performance rather than her age. The court, like the jury, had the benefit of observing the witnesses, and found the version presented by Matei and Mrs. Cheung to be far more credible than the version presented by Plaintiff. The court was left with the impression that Plaintiff could not adequately perform the job to Defendant's standards. The jury was certainly justified in accepting Defendant's version of the events over the version presented by Plaintiff. Thus, Plaintiff would not be entitled to relief even if the court could substitute its judgment for that of the jury. Accordingly, the court finds the verdict to be harmonious with the weight of the evidence and does not conclude that a miscarriage of justice has occurred.

**V.      Conclusion**

Based on the foregoing, the court concludes that the jury's verdict was in accordance with the weight of the evidence. The record does not show that the jury's verdict resulted in a miscarriage of justice, cries out to be overturned, or shocks the conscience. *See Whelan*, 226 F. App'x at 145. Thus, the evidence presented at trial supported the finding that Plaintiff's age was not a determinative factor in Defendant's decision to terminate Plaintiff's employment, and, therefore, the jury's verdict will not be disturbed.

An appropriate order will be issued.

                                            s/Sylvia H. Rambo
                                            United States District Judge

Dated:  February 24, 2015.